# STATE OF MICHIGAN

# COURT OF APPEALS

TAYLOR SCHOOL DISTRICT and TAYLOR
FEDERATION OF TEACHERS, AFT, LOCAL
1085,

              Respondents-Appellants,

v

NANCY RHATIGAN and REBECCA METZ,

              Charging Parties-Appellees.

UNPUBLISHED
December 13, 2016
APPROVED FOR
PUBLICATION
February 9, 2017

No. 326128
MERC
LC Nos. 13-000133; 13-000029

Before: MARKEY, P.J., and OWENS and BOONSTRA, JJ.

OWENS, J. (*dissenting*).

I respectfully dissent from the majority's affirmance of the Michigan Employment Relations Commission's (MERC) findings that the school district committed unfair labor practices in violation of sections 10(1)(a) and (c)[1] of the public employment relations act (PERA),[2] and that the union committed an unfair labor practice in violation of sections 10(2)(a) and (c)[3] and, therefore, breached its duty of fair representation.

At the time the union and the school district executed the February 2013 union security agreement, the Public Employment Relations Act (PERA), MCL 423.201 *et seq.*, authorized public employees to organize for the purpose of collective bargaining, MCL 423.209, and precluded a public employer or an officer or an agent of a public employer from interfering with, restraining, or coercing public employees in the exercise of their rights guaranteed in section 9, MCL 423.210(1)(a), and from discriminating in regard to hire, terms, or other conditions of employment to encourage or discourage membership in a labor organization, MCL 423.210(1)(c). PERA provided, however, that

---

[1] MCL 423.210(1)(a) and (c).

[2] MCL 423.201 *et seq.*

[3] MCL 423.210(2)(a) and (c).

-1-

> this act or other law of this state does not preclude a public employer from making an agreement with an exclusive bargaining representative . . . to require as a condition of employment that all employees in the bargaining unit pay to the exclusive bargaining representative a service fee equivalent to the amount of dues uniformly required of members of the exclusive bargaining representative." [MCL 423.210(1)(c).]

Thus, PERA did not preclude the school district and the union from entering into the union security agreement and requiring all employees in the bargaining unit, including non-members of the bargaining unit, to pay a service fee equivalent to the amount of dues required of members of the bargaining unit.

There can be no dispute that if the school district and the union had entered into the union security agreement after the effective date of 2012 PA 349 the agreement would not be enforceable under PERA, as amended, because section 10(3)(c)[4] of the act gives public employees the right to not financially support a labor organization or bargaining representative. However, the union security agreement in this case was executed in February 2013 after a lengthy period of collective bargaining. Section 10(5)[5] of PERA, as amended, provides in part that that any agreement between a public employer and labor organization that violates section 10(3) is unlawful and unenforceable, *unless such an agreement was already in effect when 2012 PA 349 took effect* – which was on March 28, 2013. I would find that PERA, as amended, clearly and explicitly permits the enforcement of union security agreements entered into before that date. Because the school district and the union entered into the union security agreement before March 28, 2013, I would hold that actions taken by either respondent to enforce the terms of the agreement would not violate PERA, as amended.

Nonetheless, the majority finds that the union security agreement is not enforceable on other grounds. The majority concludes that MERC properly found that the school district engaged in unfair labor practices under section 10(1)(a) "by coercing Charging Parties to financially support the union" and that the school district's enforcement of the union security agreement discriminated against the charging parties in violation of section 10(1)(c) by violating their protected right under PERA, as amended, to not financially support a labor organization. However, as previously noted, the charging parties did not have a protected right to be free of any obligation to financially support a labor organization or bargaining representative at the time of the contract negotiations and ratification of the union security agreement.[6] Thus, I would find that MERC's rulings that the school district had coerced the charging parties into financially supporting the union in violation of their rights, and that the school district acted with hostility toward the charging parties' rights to refrain from financially supporting a labor organization, were not grounded in a fair and reasonable interpretation of PERA.

---

[4] MCL 423.210(3)(c).

[5] MCL 423.210(5).

[6] On January 14, 2013, the union and the school district reached agreement on the terms of the CBA to replace a contract that had expired on August 16, 2011.

The majority also concludes that MERC properly found that the union's conduct in acting in a manner that would compel employees of the bargaining unit to support the union for 10 years beyond the effective date of 2012 PA 349 rose to the level of arbitrary conduct in violation of the union's duty of fair representation and, therefore, constituted an unfair labor practice in violation of sections 10(2)(a) and (c). In *Ann Arbor Fire Fighters Local 1733*, MERC Decision & Order (Case No. CU88 F-34), MERC refused to declare a 10-year pension moratorium agreement invalid for being "too long to be consistent with PERA's goal of promoting good faith bargaining." MERC stated:

> The employer suggests that we should step in to invalidate any agreement between parties to a collective bargaining relationship which is unconscionably long. In support of this proposition it cites several cases finding employer proposals for 5-year contracts, together with other conduct, to be evidence of bad-faith bargaining under the National Labor Relations Act (NLRA), 29 USC 150. The reasoning in these cases is that the employer clearly knew that its proposals would be unacceptable to the union. Therefore, the proposals themselves were evidence of the employer's fixed intention not to reach any agreement with the union. The issue in these cases was the employer's good faith negotiations. These cases do not stand for the proposition that a 5-year collective bargaining agreement is *per se* invalid under the NLRA.
>
> We are not authorized by PERA to police the content of agreements to redress imbalances of bargaining power between the parties. Nor are we willing to hold that parties may not enter into a bargaining waiver of 10 years duration without violating the Act. . . . . [T]he parties clearly and unmistakably agreed to a 10-year pension moratorium. While the scope of the agreement may be in dispute, the length of it is not. . . . . Again, however, our task is to determine the parties' bargaining rights and obligations under PERA, not to reform their contract. (Citations omitted).

Similarly, in this case, the school district and the union clearly and unmistakably agreed to a 10-year union security agreement. The mere fact that the parties were aware of the pending effective date of 2012 PA 349 does not, in my view, demonstrate that the union acted arbitrarily in entering into an agreement that it determined to be in the best interests of the bargaining unit as a whole.

In sum, I would reverse MERC's decision that the school district committed unfair labor practices in violation of sections 10(1)(a) and (c) and that the union committed an unfair labor practice in violation of sections 10(2)(a) and (c) and as a result breached its duty of fair representation and, therefore, I would reverse the cease and desist order against respondents.

/s/ Donald S. Owens